[Civ. No. 51832. Second Dist., Div. Three. July 27, 1978.]

TZEVAIR MERAIA et al., Plaintiffs and Appellants, v.
FAIRY A. McCANN et al., Defendants and Respondents.

**COUNSEL**

Richard C. Gilman for Plaintiffs and Appellants.

Sweet, Norman & Dowler and Richard M. Norman for Defendants and Respondents.

**OPINION**

**POTTER, J.**—Plaintiffs Tzevair Meraia and Vasil Thingili have appealed from the dismissal of their action to recover $15,000 damages against Fairy A. McCann and James R. Murphy for conspiracy to induce a breach of contract and interference with contract.[1] Dismissals were

---

[1]The action also sought such damages against John R. Mosby and Jonie I. Mosby, named as parties to the conspiracy. The dismissal, however, did not relate to these parties, and they are not involved in this appeal.

ordered pursuant to Code of Civil Procedure section 583, subdivision (a), for want of diligent prosecution.

The record indicates the following chronology of events: the complaint was filed on December 21, 1972, and service upon defendants was effected on December 30, 1972, and January 2, 1973. Defendants' demurrers were sustained and an amended complaint was filed February 9, 1973. Service of the amended complaint was made upon defendant Murphy on the same date and upon defendant McCann on February 23, 1973. Counsel for both defendants confirmed open-ended extensions of time within which to file responsive pleadings. The letter from counsel for defendant McCann, dated March 30, 1973, read as follows:

"This letter will serve to confirm our telephone conversation of March 28, 1973 in which you were kind enough to grant me an open extension of time within which to file responsive pleadings to your First Amended Complaint, etc., filed on February 9, 1973 in the above-entitled action. It is understood that this open extension of time is subject to a ten day written demand on your part that such responsive pleadings be filed, and it will then be incumbent upon me to file such pleadings within that ten days, if they have not previously been filed.

"Thank you for your courtesy."

The letter from counsel for defendant Murphy, dated February 15, 1973, read as follows:

"This letter is to confirm that on February 9, 1973, I accepted service in my office of a First Amended Complaint in the above-entitled matter. You agreed at that time to give me an open extension of time within which to file a responsive pleading until, in writing, you notify me to the contrary.

"Naturally, I would appreciate a reasonable period of time within which to file a responsive pleading after you notify me."

No further activity was undertaken by any of the parties to the action until February 16, 1977, at which time plaintiffs' attorney requested that counsel for both defendants file answers. On March 2, 1977, defendant Fairy A. McCann filed an answer and on the same date moved to dismiss

the action for want of prosecution. Counsel for defendant James R. Murphy joined in the motion to dismiss on March 28, 1977, on which date he also made a motion to withdraw as attorney for defendant Murphy on the ground that he had lost contact with Murphy in February 1973, after a check representing his retainer had been returned because of insufficient funds.

On April 15, 1977, plaintiffs' attorney filed their opposition to the motions to dismiss. In addition to relying upon the effect of the open extensions of time to plead, counsel explained that his delay in prosecuting the action was due to the fact that his clients had extremely heavy accents, a problem which "gradually improves as they acquire more time in the United States of America." It was his judgment that "the interests of all the litigants and the court would be better served by bringing the trial at the latest possible time which will permit the minimization of the language barrier problems . . . ."

At the hearing of the motions on April 18, 1977, the additional motion of counsel for defendant Murphy to withdraw was granted, and both motions to dismiss were also granted. An order of dismissal was entered on April 22, 1977, dismissing the action as against defendants McCann and Murphy.

Thereafter, plaintiffs filed a motion to set aside the dismissal on the grounds that it was taken against them through their mistake, inadvertence, surprise or excusable neglect, and was erroneous. No additional factual material was supplied in support of this motion other than a statement in the declaration of plaintiffs' counsel to the effect that throughout the pendency of the open-ended extension, he "was relying upon that extension of time in making [his] own calculations and strategy as to how to handle the case" in relation to the language problem already adverted to.

## CONTENTIONS

Plaintiffs contend that the trial court abused its discretion in dismissing the action because (1) the open-ended stipulations extending the time to plead were a waiver of plaintiffs' diligence, and (2) defendants failed to establish any prejudice from the delay. Defendants controvert both contentions.

## Discussion

*Summary*

■ We are compelled by the decision of our Supreme Court in *General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449, 455-456 [124 Cal.Rptr. 745, 541 P.2d 289], to conclude that the open-ended extension of time to plead was a binding agreement excusing plaintiffs from diligence. Such being the case, it is irrelevant whether defendants showed any prejudice resulting to them from the delay.

*Defendants Waived Any Requirement
of Diligence on Plaintiffs' Part*

The effect of the open-ended extension granted defendants to plead is governed by the decision of our Supreme Court in *General Ins. Co.*, *supra*, in which the court construed an identical stipulation, terminable upon 10 days' written notice. The stipulation was never terminated in accordance with its terms and when three years passed without any responsive pleading, defendants moved to dismiss pursuant to the provisions of Code of Civil Procedure section 581a, subdivisions (a) and (c). The trial court denied the motion to dismiss and this was affirmed on appeal. The basis of the affirmance was that the extension of time to plead was a binding mutual agreement by which both parties were excused from diligence. The court said (15 Cal.3d at pp. 454-456):

"Subdivision (c) penalizes a plaintiff who fails to obtain default judgment within the prescribed period by requiring dismissal. Like the service requirement of subdivision (a) and five-year trial requirement of Code of Civil Procedure section 583, it is designed to encourage diligence in the prosecution of an action once it has been filed. (*Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169, 172 [105 P.2d 118]; *Moore* v. *Superior Court* (1970) 8 Cal.App.3d 804, 810 [87 Cal.Rptr. 620]; *J. A. Thompson & Sons, Inc.* v. *Superior Court* (1963) 215 Cal.App.2d 719, 722 [30 Cal.Rptr. 471].) However, the three provisions allow extension of time by filed written stipulation, reflecting[2] *that the policy of diligence is subordinate to the parties' own interests.* . . .

"[2]In 1949, the Legislature provided for waiver of the judgment or answer requirement. (Stats. 1949, ch. 463, p. 810.) Prior to that time, a provision permitting stipulations extending time applied to the five-year period for bringing to trial but not to the three-year default judgment requirement. *Rio Del Mar etc. Club* v. *Superior Court* (1948) 84 Cal.App.2d 214, 225-226 [190 P.2d 295] and *Schultz* v. *Schultz* (1945) 70 Cal.App.2d

"... . . . . . . . . . . . . . . . . . .

"A written stipulation extends section 583's five-year term for bringing the action to trial if it *expressly* [italics in original] either waives the right to dismissal, or extends the time of trial to a date beyond the five-year period. But merely extending the time of trial to sometime within the five-year term—absent a showing the parties intended otherwise—will not extend the deadline. (*J. C. Penney Co.* v. *Superior Court* (1959) 52 Cal.2d 666, 669 [343 P.2d 919].) The instant case falls between the two rules set forth in *J. C. Penney.* Here, the stipulation does not expressly extend time either within or beyond the allotted period. Rather, time is extended indefinitely, subject to termination by notice, and the stipulation remained in force at expiration of the period.

"*A written agreement extending time to answer reflects mutual intent to defer the proceedings and must be enforced.* It would be unconscionable to permit a plaintiff, after he had granted a defendant time to answer, to take default judgment during the extension. *Expressly excusing the duty to answer, the agreement impliedly stays the power of the plaintiff to take default.*

"Having by the instant written agreement precluded plaintiff from taking a default judgment prior to expiration of the three-year period, petitioner may not now rely on plaintiff's failure to take default to obtain dismissal of the action.[3] Our conclusion meets the purpose of the statute. Expressly reflecting petitioner's intent to obtain time to answer and by *necessary* [italics in original] implication precluding default judgment, the agreement establishes the requisite *mutual intent allowing each party to excuse the other from diligence* both in answering and in taking default.

293, 298-299 [161 P.2d 36] were decided before the 1949 amendment. Language in those cases that the parties may not extend by stipulation the three-year period for judgment or answer states the law as it existed at the time of those decisions—prior to the 1949 amendment."

"[3]In *City of Los Angeles* v. *Superior Court* (1921) 185 Cal. 405, 413 [197 P. 79], the stipulation deferred trial for one year and further provided that at least a 90-day notice of the time set for trial shall be given. The agreement also provided that 'plaintiff shall not be held to have failed to prosecute said cause during the said year, and that no part of the said year shall be considered should any question arise in said cause concerning the prosecution thereof.' (At p. 408.) The express provision excluding one year from the computation of the period to bring to trial precludes inferring a further extension based on the notice requirement, and serves to distinguish the case. Moreover, in that case the plaintiff could bring the cause to trial within the five-year period while performing the agreement, whereas *in the instant case default could not be obtained without either terminating the agreement or violating its implied term.*"

And being written, the agreement will afford counsel little opportunity for dispute over its substance and operative effect. [Fn. 4 omitted.]" (Italics added except where otherwise noted.)

We are unable to find any valid distinction between the situation presented in *General Insurance* and that in the case at bench. Consequently, *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], enjoins us to reach the same result. The extension of time to plead herein precluded plaintiffs from bringing the case to trial as effectively as the plaintiff in *General Insurance* was precluded from taking a default judgment. The case must be at issue and an at-issue memorandum must be filed before it can "be placed on the civil active list or be set for . . . trial." (Cal. Rules of Court, rule 206(a).) To be sure, plaintiff could eliminate any disability in this respect by giving 10 days' notice to defendants, but such was also the case in *General Insurance Co.,* and this fact was pointed out by the dissent of Chief Justice Wright wherein he said (15 Cal.3d at p. 457): "It is true that an agreement which expressly excuses the defendant from filing an answer impliedly and simultaneously stays the plaintiff's power to take a default.[2] Moreover, as the majority states, 'It would be unconscionable to permit a plaintiff, after he had granted a defendant time to answer, to take default judgment *during the extension.*' (Italics supplied.) It is incorrect, however, to characterize the present agreement for a terminable open extension of time to plead as one which 'precluded plaintiff from taking default judgment prior to expiration of the three-year period.' Although 'the stipulation remained in force at expiration of the period,' it did so *only* because plaintiff had unilaterally chosen not to exercise its expressly reserved right to terminate the extension on 10 days' notice. By giving such notice at any time after the agreement was made plaintiff could have eliminated all operative effects of the agreement upon either party within the specified 10 days. . . ."

It is patent that Code of Civil Procedure section 583, subdivision (a), like Code of Civil Procedure section 581a, subdivisions (a) and (c), "is designed to encourage diligence in the prosecution of an action once it has been filed." (*General Ins. Co.* v. *Superior Court, supra,* 15 Cal.3d at p. 454.) Its language clearly so provides (the dismissal is "for want of prosecution"), and it has uniformly been so construed. (*Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17, 23 [90

[2]Section 585, subdivisions 1 and 2, authorizes the taking of a default only if no answer or other proper response to the complaint has been filed 'within the time specified in the summons, or such further time as may be allowed.' "

Cal.Rptr. 405].) If, therefore, an open-ended extension of time to plead is a binding mutual agreement to defer the proceedings and excuse both parties from diligence, the effect upon Code of Civil Procedure section 583, subdivision (a) must be the same as it is upon the other sections designed to accomplish the same purpose.

We realize that there is one distinction between Code of Civil Procedure section 581a, subdivisions (a) and (c), and section 583, subdivision (b), on the one hand and section 583, subdivision (a), on the other. Each of the former sections contains an express provision to the effect that it applies "except where the parties have filed a stipulation in writing that the time may be extended." Section 583, subdivision (a), contains no such exception. It does, however, provide "[t]he procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council." California Rules of Court, rule 203.5, governing motions to dismiss, provides in subdivision (e) that "[i]n ruling on the motion the court shall consider . . . the nature of any extensions of time or other delay attributable to either party; . . ." It is thus apparent that the Legislature has not exempted motions under Code of Civil Procedure section 583, subdivision (a), from the binding effect of written agreements deferring the proceedings and mutually excusing the parties from diligence.

From the foregoing we conclude that defendants may not rely upon any lack of diligence on the part of plaintiffs prior to the termination of the open-ended extension of time to plead. No substantial time elapsed from the time such notice was given until the case was dismissed; consequently, it was an abuse of discretion to dismiss the case.

*It is Unnecessary to Decide*
*Whether Defendants Were Prejudiced*

Since there was no legally cognizable lack of diligence on plaintiffs' part, we need not reach the question of defendants' claimed prejudice. We note in this connection, however, that apart from the so-called "presumption of prejudice," the validity of which is at least questionable (*City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 563 [133 Cal.Rptr. 212]), there is very little in the record to suggest prejudice to defendants. No factual showing of any kind was made in this respect except in the declaration in support of the motion of counsel for defendant Murphy to be relieved. That declaration showed that counsel had lost contact with Murphy practically simultaneously with the making

of the stipulation in February 1973. Patently, such loss of contact did not result from any delay pursuant to the stipulation. There is nothing in the record to suggest that earlier revocation of the open-ended extension of time to plead would have had any result other than to precipitate an earlier motion to withdraw as attorney of record. None of the other defendants have made any factual showing suggesting that Murphy's testimony was vital to their defense. Thus, even if plaintiffs were chargeable with a lack of diligence, it would be difficult to justify any finding of prejudice to defendants.

The judgment is reversed and the case remanded for further proceedings consistent with the views above stated.

Cobey, Acting P. J., and Allport, J., concurred.